1   **BRYAN CAVE LLP**
    Jonathan Pink, California Bar No. 179685
2   3161 Michelson Drive, Suite 1500
    Irvine, California  92612-4414
3   Telephone:   (949) 223-7000
    Facsimile:   (949) 223-7100
4   E-mail:       jonathan.pink@bryancave.com

5   **BRYAN CAVE LLP**
    Kara Cenar, (*Pro Hoc Vice Pending*)
6   161 North Clark Street, Suite 4300
    Chicago, IL  60601-3315
7   Telephone:   (312) 602-5000
    Facsimile:   (312) 602-5050
8   E-mail:       kara.cenar@bryancave.com

9   Attorneys for Defendants
    WILLIAM ADAMS, JR.; STACY FERGUSON; ALLAN PINEDA; JAIME
10  GOMEZ; TAB MAGNETIC PUBLISHING; HEADPHONE JUNKIE
    PUBLISHING, LLC; WILL.I.AM. MUSIC, LLC; JEEPNEY MUSIC, INC.; and
11  CHERRY RIVER MUSIC CO.

12              **UNITED STATES DISTRICT COURT**

13      **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

14

15  BRYAN PRINGLE, an individual,            | Case No. SACV10-1656 JST(RZx)

16              Plaintiff,                    | Hon. Josephine Staton Tucker
                                              | Courtroom 10A
17      v.
                                             | **DEFENDANTS' MEMORANDUM**
18  WILLIAM ADAMS, JR.; STACY                | **OF POINTS AND AUTHORITIES IN**
    FERGUSON; ALLAN PINEDA; and              | **OPPOSITION TO EX PARTE**
19  JAIME GOMEZ, all individually and        | **APPLICATION OF PLAINTIFFS**
    collectively as the music group The      | **FOR A TEMPORARY**
20  Black Eyed Peas; DAVID GUETTA;           | **RESTRAINING ORDER AND**
    FREDERICK RIESTERER; UMG                 | **ORDER TO SHOW CAUSE RE**
21  RECORDINGS, INC.; INTERSCOPE            | **PRELIMINARY INJUNCTION**
    RECORDS; EMI APRIL MUSIC,
22  INC.; HEADPHONE JUNKIE                   | [Concurrently filed with Declarations of
    PUBLISHING, LLC; WILL.I.AM.              | Kara E. F. Cenar, Frederick Reisterer,
23  MUSIC, LLC; JEEPNEY MUSIC,              | and Erik Laykin]
    INC.; TAB MAGNETIC
24  PUBLISHING; CHERRY RIVER
    MUSIC CO.; SQUARE RIVOLI                 | Date:
25  PUBLISHING; RISTER EDITIONS;            | Time:
    and SHAPIRO, BERNSTEIN & CO.,            | Dept.:
26
                Defendants.                   | Complaint Filed:   October 28, 2010
27                                            | Trial Date:         Not Assigned

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     LEGAL ARGUMENT ......................................................................... 3

        A.      Pringle is Not Entitled to a Temporary Restraining Order ............. 3

                1.      Pringle Fails to Establish Irreparable Harm .......................... 4

                2.      Pringle Fails to Establish a Likelihood of Success on the
                        Merits ................................................................................... 5

                3.      The Relative Hardship to Each Party Strongly Favors
                        Denying Pringle's Application for a TRO and a Preliminary
                        Injunction ........................................................................... 13

        B.      Pringle is Not Entitled to Ex Parte Relief ................................... 14

        C.      If this Court Grants Pringle's Application, Pringle Must Post a
                Bond ...................................................................................... 17

III.    CONCLUSION .................................................................................. 18

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1

## TABLE OF AUTHORITIES

2

## <u>CASES</u>

3
<u>Page</u>

4

*Allen v. Destiny's Child,*
   2009 U.S. Dist. LEXIS 63001 (D.C. N.D. Ill 2009) ...................................... 8

*Bright Tunes Music Corp. v. Harrisongs Music, Ltd.,*
   420 F. Supp. 177 (S.D.N.Y. 1976) .................................................................... 8

*Cal. Independent System Operator Corp. v. Reliant Energy Services, Inc.,*
   181 F. Supp. 2d 1111 (E.D. Cal. 2001) ............................................................ 3

*Chalk v United States District Court,*
   840 F.2d 701 (9th Cir. 1988) ........................................................................... 16

*City of Tuscaloosa v. Harcros Chemicals, Inc.,*
   158 F.3d 548 (11th Cir. 1998) ......................................................................... 12

*Cosmetic Ideas, Inc. v. IAC/Interactive Corp.,*
   606 F.3d 612 (9th Cir. 2010) ........................................................................ 1, 7

*Daubert,*
   509 U.S. at 591 ................................................................................................ 13

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ........................................................................................ 11

*Earth Island Institute v. U.S. Forest Serv.,*
   442 F.3d 1147 (9th Cir. 2006) ....................................................................... 3, 4

*Fisher v. Dees,*
   794 F.2d 432 (9th Cir. 1986) .......................................................................... 8, 9

*Gaste, supra,*
   863 F.2d at 1068 ............................................................................................... 8

*Granny Goose Foods, Inc. v. Teamsters,*
   415 U.S. 423 (1974) ........................................................................................ 15

*Kodadek v. MTV Networks, Inc.,*
   152 F.3d 1209 (9th Cir. 1998) .......................................................................... 6

*LGS Architects, Inc. v. Concordia Homes of Nev.,*
   434 F.3d 1150 (9th Cir. 2006) .......................................................................... 4

*Los Angeles Memorial Coliseum Commission v. National Football League,*
   634 F.2d 1211 (9th Cir. 1980) ........................................................................ 14

*Maiz v. Virani,*
   253 F.3d 641 (11th Cir. 2001) ......................................................................... 10

*McCorvey,*
   298 F.3d at 1257 (alterations in original) ......................................................... 10

*Metropolitan-Media Broadcasting Corp. v. MGM/UA Entertainment Co.,*
   611 F. Supp. 415 (C.D. Cal. 1985) ................................................................ 4, 5

*Miller v. LeSea Broadcasting, Inc.,*
   896 F. Supp. 889 (E.D. Wis. 1995) ................................................................. 17

*Mission Power Engineering Co. v. Continental Casualty Co.,*
   883 F. Supp. 488 (C.D. Cal. 1995) ....................................................... 15, 16, 17

*Newton v. Diamond,*
   388 F.3d 1189 (9th Cir. 2004) .......................................................................... 8

*Oakland Tribune, Inc. v. Chronicle Publ. Co.,*
   762 F.2d 1374 (9th Cir. 1985) .......................................................................... 4

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,*
   326 F.3d 133 (11th Cir. 2003) ......................................................................... 12

*Reno Air Racing Associate v. McCord,*
   452 F.3d 1126 (9th Cir. 2006) ......................................................................... 15

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

*Rouco*,
    765 F.2d at 995 ................................................................................... 13
*Stanley v. University of Southern California*,
    13 F.3d 1313 (9th Cir. 1994) .............................................................. 16
*Tisi v. Patrick*,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000) .............................................. 2, 9
*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ..................................................... 11, 12
*Unleashed Magazine, Inc. v. Orange County, Florida*,
    2008 WL. 4304883 (M.D. Fla. September 16, 2008) ......................... 11
*Well-Made Toy Manufacturing Corp. v. Goffa International Corp.*,
    354 F.3d 112 (2d Cir. 2003) ............................................................ 5, 6

**STATUTES**

17 U.S.C. § 408 .......................................................................................... 2
17 U.S.C. 408(b) ................................................................................ 1, 6, 7
17 U.S.C. 411 ............................................................................................. 1
Fed. R. Civ. P. 65 ................................................................................... 15
Fed. R. Civ. P. Rule 65(b) ..................................................................... 15
Fed.R.Evid. 702 ......................................................................... 10, 11, 12

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR A TRO

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1

## MEMORANDUM OF POINTS AND AUTHORITIES[1/]

2

## I.   INTRODUCTION

3

Plaintiff Bryan Pringle ("Plaintiff" or "Pringle") waited more than *18 months*

4

to file his *ex parte* application seeking a Temporary Restraining Order ("TRO") to

5

prevent further use and distribution of the internationally acclaimed song, "I Gotta

6

Feeling."  Despite this delay, Pringle fails to cite to any immediate, emergency or

7

even "irreparable harm" in any of his papers.  Nor do his papers disclose that Pringle

8

threatened to file this claim in May 2010 – almost a year after "I Gotta Feeling" was

9

released and more than six months before filing this ex parte request for TRO.

10

Indeed, Pringle himself took 11 years to even file an application for registration of

11

his alleged copyrighted work (on November 15, 2010 just days before making this

12

emergency application).  The copyright application has not issued into a

13

Registration[2], and as discussed below, the registration on which Plaintiff relies is

14

plagued with invalidating deficiencies.

15

Not only is Pringle's application untimely, but it fails to demonstrate *any* of

16

the required elements for the issuance of any preliminary relief, let alone the

17

extraordinary relief of a Temporary Restraining Order:

18

*First*, there is no emergency.  As Pringle himself admits, "I Gotta Feeling"

19

was "immensely popular" upon its June 2009 release, see Pringle Decl., ¶ 12, and

20

there is no dispute that Pringle has known of his claim for at least six months.  *See*

21

Cenar Decl., ¶ 1.  Nevertheless, Pringle delayed seeking emergency relief until the

22

week before Thanksgiving.[3]  Further, the issues set forth in the application are the

23

_____

24

[1/]This motion is being brought by The Black Eyed Peas, with other parties also joining.

25

[2] A claim for Copyright infringement cannot be maintained without a registration.  17 USC 411.
An application for Registration, in order to be complete, requires a bonafide copy of the original

26

work, as a deposit copy.  17 USC 408(b).  Although the Ninth Circuit has held the registration
requirement is satisfied with a pending application, see *Cosmetic Ideas, Inc. v. IAC/Interactive*

27

*Corp.*, 606 F.3d 612 (9th Cir. 2010), this assumes it is a complete application.

28

[3] Indeed, the timing of this ex parte application smacks of gamesmanship.  It was not filed with the
original or first amended complaint in this action.  Rather, Pringle's counsel waited until the

1   very issues to be tried in this case.  There is no emergency situation that would

2   require those issues to be litigated in summary fashion, by way of an *ex parte*

3   application that requires a response within twenty-four hours of service.

4          Second, Pringle cannot establish a likelihood of success on the merits.  In

5   fact, Pringle has yet to offer evidence of his own creation of the alleged underlying

6   work.    The only "copy" of the derivative work at issue Pringle has provided is a

7   reconstructed version[4] which – as a matter of law – will not suffice for registration

8   purposes under 17 U.S.C. § 408.  In fact, Pringle's registration of the underlying

9   work "Take a Dive" is also questionable, because the registration on which Pringle

10  relies references 18 songs, *none* of which is titled "Take A Dive."[5]  Nor can Pringle

11  establish access.  While he claims to have sent unsolicited copies of various versions

12  of his work (the "Unsolicited Submissions") to scores of production companies over

13  a fourteen *year* period, but does not allege having provided a copy to either Guetta

14  or The Black Eyed Peas and, indeed, fails even to provide testimonial evidence that

15  he supplied the specific version of "Take a Dive" to any Defendant in this case.  *See*

16  Pringle Decl., ¶ 7.[6]  In any event, as described below, Defendants can establish that

17  the "guitar twang" at the heart of Pringle's sampling was independently created and

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

19  Monday of Thanksgiving week, a time when many attorneys are vacation.  It is also conspicuously
20  timed to coincide with the beginning of the holiday shopping season, calculated to cripple sales of
    The Black Eyed Peas' music.

21  [4] The reconstructed version purports to have been drawn from an image file (not submitted with
    the TRO papers) that at least in the version provided to some Defendants, has questionable dating
22  and was inaccessible.

23  [5]It does, however, list the song "Dive."  *Id.*  The Complaint makes no reference to "Dive," and
    does not explain the relationship, if any, between these works or titles.

24  [6] Pringle also does not allege that any of his work was submitted directly to any member of The
    Black Eyed Peas.  Rather, on "information and belief," he alleges members of The Black Eyed
25  Peas had "access" to his unsolicited submissions to EMI, UMG, Interscope based on their alleged
    "relationship" with those companies.  Thus Pringle's claims of "access" by The Black Eyed Peas
26  is based "*upon information and belief*," upon a fanciful theory of second or third hand speculated
    "access" to the **unsolicited submissions of Pringle's music to EMI, Interscope and Universal
27  Music Group.**  An unsolicited submission of a musical work to a record company does not
    establish access by the recording artist. Tisi v. Patrick, 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000).
28

1  produced by Guetta, and then provided to The Black Eyed Peas, thus defeating

2  Pringle's claim entirely.  See Reiseterer Declaration.

3       Third, Pringle fails to offer any basis upon which this Court could find

4  irreparable harm should this Court not grant the requested TRO.  The alleged

5  infringement has been ongoing for more than eighteen months.  During that time,

6  Pringle engaged in protracted settlement discussions, thus demonstrating that his

7  harm was, in fact, reparable.  Pringle will have every opportunity to litigate the

8  issues related in his application during the course of this lawsuit.  There is no harm

9  in requiring that litigation to proceed before any injunctive relief is imposed.  As

10 discussed further herein, the harm to Defendants should this untimely ex parte

11 application be granted would far exceed any harm to Pringle.

12      Fourth, even if this Court were to find some basis upon which a TRO could

13 be granted, Pringle must be required to post a bond in the amount of $15,000,000 to

14 cover the harm that Defendants will suffer upon a finding that this TRO was

15 improvidently granted.

16      Neither Pringle's papers nor the underlying facts in this case offer any basis

17 upon which this Court could grant the extraordinary relief of a preliminary

18 injunction.  Pringle's *ex parte* application should therefore be denied.

19 **II.    LEGAL ARGUMENT**

20      **A.    Pringle is Not Entitled to a Temporary Restraining Order**

21      Temporary restraining orders are governed by the same standards applicable

22 to preliminary injunctions. See *Cal. Indep. Sys. Operator Corp. v. Reliant Energy*

23 *Servs., Inc.*, 181 F. Supp.2d 1111, 1126 (E.D. Cal. 2001).  Pringle is not entitled to

24 an injunction unless he can demonstrate he is entitled to such preliminary relief in

25 one of two ways.  Under the "traditional criteria," a plaintiff must show: (1) a strong

26 likelihood of success on the merits; (2) the possibility of irreparable injury to

27 plaintiff if preliminary relief is not granted; (3) a balance of hardships favoring the

28 plaintiff; and (4) advancement of the public interest. *Earth Island Inst. v. U.S.*

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

*Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006).  Alternatively, a plaintiff may establish "either a combination of probable success on the merits and the possibility of irreparable harm or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.*

These two formulations of the alternate test "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1155 (9th Cir. 2006).  Pringle cannot satisfy either test in this case.

### 1.   Pringle Fails to Establish Irreparable Harm

A "[p]laintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  In fact, at least one Court in the Central District has held that a *four month* delay in seeking injunctive relief supported denial of plaintiff's motion for preliminary injunction.  See *Metro-Media Broadcasting Corp. v. MGM/UA Entertainment Co.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985).

Here, the delay was significantly greater than four months.  Specifically, the alleged "infringement" began upon release of "I Gotta Feeling" in June 2009, a year and a half ago.  Pringle likely heard the song at that time given its popular success and wide distribution (see Pringle Decl, ¶ 12), and he certainly knew of it in May 2010, when his counsel contacted The Black Eyed Peas regarding the alleged infringement.  (Cenar Decl. 1.)  Yet Pringle did not seek an injunction last May, choosing instead to engage in settlement discussions, nor did he seek any injunction in September 2010 when The Black Eyed Peas rejected his settlement demands, or in October 2010, when he filed his original Complaint.  (Cenar Decl 4.)[7]  Equally telling is the absence of any claim of "irreparable harm" by Pringle himself in his

---

[7] Pringle likewise took his time in seeking a copyright registration in the work at issue.  Pringle did not seek that registration until November 14, 2010: 11 *years* after allegedly publishing the work.  (FAC ¶ 29.)

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

Declaration – a strong indication that no such harm *exists*.  Simply put, if the relief Pringle now seeks was truly intended to protect his purported valuable intellectual property rights, he would have sought that relief much sooner. His eighteen month delay in seeking such relief supports a denial of his application.  *Metro-Media, supra*, 611 F. Supp. at 427.  The timing of this application strongly suggests that the relief sought is little more than a thinly disguised effort to harm the Defendants during the retail industry's busiest period.

> ### 2. Pringle Fails to Establish a Likelihood of Success on the Merits
>
> #### a. Pringle Cannot Claim Infringement of a Work that he has not Registered

Not only does Pringle fail to establish *any* irreparable harm, but his single claim for copyright infringement, on which his *ex parte* application is based, is wholly meritless for numerous reasons:

First, Pringle has failed to establish that he has, in fact, registered the work he claims was infringed.  Pursuant to the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made" with the Copyright Office."  17 U.S.C. § 411(a).  Where, as in this case, the plaintiff claims an infringement of a *derivative* work, registration of the underlying work does not suffice if the infringement claim is based on portions of the later work that did not exist in its predecessor.  See *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc*., 275 F. Supp. 2d 543, 556 (D.N.J. 2003) ([W]here a preexisting work is registered, but the derivative work is not, a suit for infringement may be maintained as to any preexisting work, but not as to any element original to the unregistered derivative work.").  A suit for copyright infringement may not proceed where the allegedly infringed elements are original to the derivative work.  *See Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 116 (2d Cir. 2003) (district court lacked

jurisdiction where "the copied work . . . [was] not listed in any copyright registration and the only copied expressive elements . . . [did] not appear in any work whose copyright [had] been registered").

Here, Pringle admits that the elements of his song, "Take a Dive" he claims were infringed first appear in the 1999 derivative version of his work. Pringle claims that he "wrote and recorded the [original] song" in or around 1998 and revised the work in 1999 by adding a common "4/4 'dance-club' style drum beat" and a three note "guitar twang sequence." *See* Complaint ¶¶ 3, 27-29. It is principally that "guitar twang sequence" that Pringle alleges Defendants have copied. Complaint ¶¶ 40-43. Because he claims infringement of his 1999 derivative, and not the 1998 original, he cannot rely on his 1998 registration of the original song as the basis for this complaint. *Well-Made Toy*, 354 F.3d at 116.

Pringle has failed to establish that he has properly registered the derivative work.  To register a sound recording, a copyright owner must deposit two "bona fide copies of the original work," which copies may not be a reconstructions of the original work. *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998) (drawings made in 1993 from memory of drawings originally made in 1991 did not satisfy deposit requirement because they were not made by "directly refer-ring to the originals," nor were they "bona fide copies of the originals"); *see also* 17 U.S.C. § 408(b).

In *Kodadek*, the plaintiff sued MTV for infringing his alleged copyright in the two animated characters on which MTV's series "Beavis and Butthead" was based. Beavis and Butthead first aired in 1993, and Kodadek filed for a copyright registration of the characters he claimed to have created in 1991. The issue in *Kodadek* was whether Kodadek's deposit of a reconstruction (sketched in 1993) of the original images in which he was asserting a copyright (allegedly sketched in 1991) complied with the registration deposit requirement. The court found that because Kodadek's 1993 drawings were not made by "directly referring to the

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR A TRO

1  originals," they were not "bona fide copies of the originals, and thus could not be

2  used as the basis for a copyright registration in the 1991 drawings. *Id.* at 1212; see

3  also *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th Cir. 1986) (finding that

4  deposit of a recreation of an original drawing did not satisfy the deposit

5  requirement).

6       Here, as in *Kodadek*, Pringle has failed to offer sufficient evidence that he

7  submitted bona fide copies of the 1999 version of "Take a Dive" in support of his

8  copyright application. 17 U.S.C. § 408(b).  See Laykin Decl. As set forth in detail in

9  the Cenar Declaration, Defendants have repeatedly refused to supply Defendants

10  with a *bona fide* copy of the work Plaintiff claims was infringed, *see generally*

11  Cenar Decl., ¶¶ 5-6, a refusal which leads Defendants to suspect that Pringle does

12  not have his original work and will therefore attempt to reconstruct it.  See Laykin

13  Decl.  As in *Kodadek*, Pringle's reconstructed copies will not satisfy the deposit

14  requirement of Section 408. Unless and until Pringle complies with 17 U.S.C. §

15  408(b) by depositing copies of the specific derivative work allegedly infringed by

16  the Defendants, he is legally barred from pursuing this case.  *See Cosmetic Ideas*

17  *Inc. v. IAC/Interactive Corp*, 606 F.3d 612 (9th Cir. 2010) (filing a completed

18  copyright application, including deposit copies, required for access to federal

19  courts).

20       Although *Cosmetic Ideas* held a pending application might fulfill § 411(a), it

21  required that the application be "complete." *Id.* at 621.  Here, Plaintiff's application

22  is not complete without a bona-fide copy of the originals.

23          **b.**    **<u>Pringle Cannot Establish Any Element of Infringement</u>**

24       Pringle likewise cannot establish access, copying or originality of the

25  underlying work.

26          *i.*    *The Guitar Twang is Not Copyrightable*

27       In addition to the registration defects noted above, the "guitar twang

28  sequence" at issue in this case is not protectable under the Copyright Act.  Courts

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1   are traditionally "mindful of the limited number of notes and chords available to

2   composers and the resulting fact that common themes frequently reappear in various

3   compositions, especially in popular music."[8][1]  *Gaste, supra,* 863 F.2d at 1068;

4   *Allen v. Destiny's Child*, 2009 U.S. Dist. LEXIS 63001 (D.C. N.D. Ill 2009) (a

5   three-note motif was held unprotectable); *c.f. Bright Tunes Music Corp. v.*

6   *Harrisongs Music, Ltd.*, 420 F. Supp. 177, 178 (S.D.N.Y. 1976) (five note motif not

7   novel, but plaintiff's use of two separate motifs in a "highly unique pattern"

8   protectable).   In *Destiny's Child*, the court rebuked the plaintiff for failing to "offer

9   any legal authority for th[e] court to consider that the location of a single, *common*

10  *three-note sequence* in a musical composition is sufficient to support a finding of

11  protectability in the context of alleged copyright infringement."  *Id.* (emphasis

12  added.)

13       Here, the "guitar twang sequence" at issue is similar to the motifs found in

14  *Harrisongs* and *Destiny's Child*.  Plaintiff alleges the "guitar twang sequence" is

15  comprised of four notes, although the Complaint more accurately portrays it as *three*

16  notes in the key of G.  See Complaint, ¶ 29 (listing notes of D4, C4 and B3); First

17  Amended Complaint ¶ 29 (listing only three unique notes in the progression).  These

18  notes are used in an a single motif composed of an eight-bar sequence in the

19  following solfège pattern: sol-fa-mi-fa-mi-fa.  *Id.* (listing the progression as: D4-C4-

20  B3-C4-B3-C4).  Accordingly, unlike in *Harrisongs*, this motif is not used in a

21  "highly unique pattern" against another motif.  Instead, it is a "common three-note

22  sequence" used in repetitive isolation for which no legal authority exists to support a

23  finding a protectability.  As with the three-note motif in *Destiny's Child*, Plaintiff's

24  "guitar twang sequence" – even *if* it is original -- is unprotectable as a de minimis

25  use.  See *Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir. 2004) (six-second,

26  three-note, non-distinctive sequence from a musical work held noninfringing de

27

28

1   minimis use); *Fisher v. Dees*, 794 F.2d 432, 435, n.2 (9th Cir. 1986).  Because the

2   allegedly infringing work makes such a quantitatively insubstantial use of the

3   purportedly copyrighted work, it falls below the threshold required for actionable

4   copying, and must be rejected on that basis.

5        Plaintiff likewise cannot establish a claim for infringement based on the

6   purported "list of similarities" between the songs at issue, particularly when the

7   work is not attached.  See Complaint ¶ 43.  That "list" is a series of unprotectable

8   elements, generic to dance-style music.  For example, Plaintiff alleges similarities in

9   tempo, "goose step" bass lines, "dance style bass drums," "low bass synthesizers,"

10  and the "rise and fall" of rhythm and syncopation.  *Id.*  However, any resemblance

11  in time, tempo, length, and other "similarities [that] are the result of common usage

12  in the industry, . . . are not indicative of copying.  *Brainard*, *supra,* 2009 WL

13  1153034.  Indeed, Plaintiff fails to assert any expressive creativity or originality

14  with respect to the elements identified on his list of similarities, even while claiming

15  that these unoriginal elements, admittedly common to "dance-club" music, renders

16  "I Gotta Feeling" "substantially similar" to the 1999 Work.  Compl., ¶ 43.

17               *ii.      Pringle Cannot Establish Access*

18        Pringle' claim of "access" is founded entirely on his purported broad

19  distribution of unsolicited material to defendants UMG and EMI and Interscope, and

20  the illogical quantum leap that one of these corporate entities must have shared the

21  material with The Black Eyed Peas.  Pringle's access claim fails as a matter of law.

22  *See Tisi v. Patrick*, 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000) (holding an unsolicited

23  submission of a musical work to a record company does not establish access by the

24  recording artist).  In any event, Pringle does not supply any evidence (testimonial or

25  otherwise) establishing that he sent the particular version he claims was infringed to

26  any Defendant—let alone to any of the writers of "I Gotta Feeling."  *See* Pringle

27  Decl., ¶ 7.  Pringle thus fails to offer any evidence that *any* Defendant ever received

28  a copy of his work, another reason why his *ex parte* application should be denied.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1

2                *iii.*     *Defendants Independently Created "I Gotta*

3                       *Feeling" and Plaintiff Offfers No Credible Evidence*

4                       *Otherwise*

5     Copying cannot be established because the Defendants have strong evidence

6 of independent development.  See Reisterer Decl.  Furthermore, Plaintiff has not

7 established any credible evidence that he independently created the guitar twang.

8 See Laykin Decl.  Not only are Pringle's declarations in support of this application

9 deficient under *Daubert*, but the declarations submitted in opposition directly

10 contradict Plaintiff's allegations and those of his expert.  See Declaration of Laykin.

11     The Declarations of Mark Rubel, Kevin Byrnes, and Alexander Stewart are

12 inadmissible under *Daubert* and Fed.R.Evid. 702.   The declaration of Mr. Gallant

13 has been directly shown to be inadmissible under *Daubert* by the declaration of Mr.

14 Laykin.  See Laykin.  As the proponent of the expert testimony, Pringle bears the

15 "burden to show that [its] expert [is] 'qualified to testify competently regarding the

16 matters he intend[ed] to address; [] the methodology by which the expert reach[ed]

17 his conclusions is sufficiently reliable; and [] the testimony assists the trier of fact."

18 *McCorvey*, 298 F.3d at 1257 (alterations in original) (quoting *Maiz v. Virani,* 253

19 F.3d 641, 662 (11th Cir. 2001))).

20     The declarations of Rubel, Byrnes, and Stewart have been submitted without

21 the "Tracks" allegedly used for the basis of their  opinion(s). See e.g. Rubel,

22 paragraph 4,  Rubel Exhibit A, page 9-10 and Rubel Ex A page 20.  See e.g. Byrnes

23 para 2. See Stewart para 2.  This omission prevents this Court from performing its

24 gatekeeper function to ensure that the expert testimony is both relevant and reliable.

25 In essence Pringle is asking the Court to "take the expert's word for it", which

26 Courts are unable to do in keeping with their gatekeeper function.

27     The admissibility of expert testimony is governed by Rule 702 of the Federal

28 Rules of Evidence, which provides:

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  As the Supreme Court has emphasized, federal judges must exercise a "critical 'gatekeeping' function" to ensure that all expert testimony is both relevant and reliable.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993)); *see also Unleashed Magazine, Inc. v. Orange County, Florida*, 2008 WL 4304883 (M.D. Fla. September 16, 2008).  "This function 'inherently require[s] the trial court to conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702. *Id.* (quoting *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1257 (11th Cir. 2002) (emphasis in original).

The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"  Fed. R. Evid. 702 advisory committee's note (2000 amends.).  "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong."  *Frazier*, 387 F.3d at 1261.

When evaluating the reliability of an expert's opinion, the trial judge must assess "'whether the reasoning or methodology underlying the testimony is scientifically valid and…whether that reasoning or methodology properly can be applied to the facts in issue.'"  *Id.* (quoting *Daubert*, 509 U.S. at 592-93).  To evaluate the reliability of scientific expert opinion, the Court considers:

(1) **whether the expert's theory can be and has been tested**; (2) whether the

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

theory has been subjected to peer review and publication; (3) the known or

potential rate of error of the particular scientific technique; and (4) whether

the technique is generally accepted in the scientific community.

*QuietTech.,* 326 F.3d at 1341 (emphasis added). "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Frazier*, 387 F.3d at 1262; *see also* Fed. R. Evid. 702 advisory committee's note (2000 amends.) ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.").

Without the tracks upon which these experts purportedly used, there is no way that the Court can determine if the opinion is based upon the alleged copyrighted version—in other words, there is no way the opinion can be "tested". Mr. Gallant's declaration has been significantly and materially nullified by Mr. Lakin's declaration.

To "ensure the reliability and relevancy of expert testimony" trial courts "engage in a rigorous three-part inquiry" that considers whether "(1) the expert is qualified to testify competently regarding the maters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or determine a fact in issue." *Id. (*citing *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998). With respect to the qualification of the expert, expert status may be based on knowledge, skill, experience, training or education, but "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261. "[W]hile an expert's

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability…[O]ur caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 133, 1341-42 (11th Cir. 2003).

The third, but no less important prong of the *Daubert* test is that the expert testimony must "assist the trier of fact." *Daubert*, 509 U.S. at 591. Described by the Supreme Court as 'fit', this second prong focuses on the relevance of the proffered opinion to an issue in the case…[N]ot only must the opinion be scientifically valid, or reliable, but it must also advance the trier of fact's understanding of a material issue in the case." *Cavallo v. Star Enter.,* 892 F. Supp. 756, 761 (E.D. Va. 1995), aff'd in part, rev'd in part, 100 F.3d 1150 (4th Cir. 1996). Moreover, to meet the assistance prong of *Daubert*, the testimony must concern matters that are beyond the understanding of the average lay person. *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). Without the accompanying tracks on which Pringle's relied, there declarations provide no assistance to the trier of fact.

Also, Mr. Gallant's has been shown to be of no assistance as his report falls short of standard of care expected in the practice of professional computer forensics. His findings are incomplete and do not propound facts upon which a trier of fact could rely. Laykin Declaration p.4 (C2-C3). Specifically, electronic date stamps are easily modifiable and, thus, could have been altered. And, thus, Plaintiff is unable to show his files were not altered..

### 3.   The Relative Hardship to Each Party Strongly Favors Denying Pringle's Application for a TRO and a Preliminary Injunction

A balancing of the hardships here strongly favors The Black Eyed Peas, and thus denying Pringle's application for a TRO and preliminary injunction. Specifically, Pringle has neither shown nor even suggested that monetary damages are insufficient to compensate him for damages he would suffer should the

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR A TRO

1   temporary injunctive relief be denied.  As such, Pringle cannot demonstrate the

2   existence of any potential irreparable damage from the denial of his application.  *Los*

3   *Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1211,

4   1202 (9th Cir. 1980) (holding that…..  This alone warrants the denial of his request

5   for emergency injunctive relief.

6        Conversely, The Black Eyed Peas and the other Defendants in this action

7   would be greatly harmed by an injunction.  Defendants are in the business of selling

8   music.  It is no secret that, on the eve of Thanksgiving, we are entering the busiest

9   retail season of the year.[9]  Pringle times his request to coincide with that season,

10   knowing full well that an injunction would require the Defendants to cease all sales

11   of their hit song, "I Got a Feeling."  That is no simple task.  That song is included on

12   The Black Eyed Peas's platinum album, the E.N.D.  Not only that, but because "I

13   Gotta Feeling" was, as Plaintiff admits, licensed for use "in several nationwide

14   commercials, television episodes, and  . . . to the 2009 movie *Alvin and the*

15   *Chipmuncks: the Squeakquel*,"  (Complaint, ¶45(e)) an injunction would reach far

16   beyond the parties in this action.

17        In short, the relief Pringle seeks is not only unnecessary, but if granted, it

18   assured to wreak havoc on *all* the Defendants in this case as well as those third

19   parties to whom the song has been licensed.  Most particularly, as Pringle apparently

20   intends, it will seriously harm The Black Eyed Peas by destroying all holiday sales

21   of this music without the opportunity for fully vetted litigation on an issue that is far

22   more nuanced than Pringle's application would suggest.  Thus, not only is there no

23   need for the relief sought, a balancing of the hardships that would follow the

24   granting of that relief sharply favors the Defendants.

25        **B.**     **Pringle is Not Entitled to Ex Parte Relief**

26        Pursuant to this Court's standing order ("Standing Order"), ex parte

27   

28   

---

[9] The day following Thanksgiving Day is commonly known as Black Friday (or sometimes Green Friday) as in the United States, it is traditionally the beginning of the Christmas shopping season.

Bryan Cave LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414

1  applications are *solely* for extraordinary relief, and should be used with discretion.

2  See *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488

3  (C.D. Cal. 1995); see also Standing Order, ¶5 (parties seeking emergency or

4  provisional relief shall comply with Fed. R. Civ. P. 65 and Local Rule 65).  Fed. R.

5  Civ. P. Rule 65(b) specifies the conditions for an *ex parte* TRO, stating that "[T]he

6  court may issue a temporary restraining order without written or oral notice to the

7  adverse party or its attorney only if: (A) *specific facts* in an affidavit or a verified

8  complaint clearly show that immediate and irreparable injury, loss, or damage will

9  result to the movant before the adverse party can be heard in opposition; and (B) the

10  movant's attorney certifies in writing any efforts made to give notice and the

11  reasons why it should not be required."  *Id.*; *see also Reno Air Racing Assoc. v.*

12  *McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006); *Granny Goose Foods, Inc. v.*

13  *Teamsters*, 415 U.S. 423 (1974).[10]

14      In *Granny Goose*, the Supreme Court has held that the burden on the moving

15  party to obtain an *ex parte* TRO is quite heavy, as such relief is generally

16  disfavored.  The Court rule that the "stringent restrictions imposed . . . by Rule 65

17  on the availability of *ex parte* temporary restraining orders reflect the fact that our

18  entire jurisprudence runs counter to the notion of court action taken before

19  reasonable notice and an opportunity to be heard has been granted both sides of a

20  dispute. Ex parte temporary restraining orders are no doubt necessary in certain

21  circumstances, but under federal law they should be restricted to serving their

22  [10] "Notice" in the federal rules means "notice of hearing" rather than simply telling the opposing

23  party what the movant is about to do.  See *Mission Power Engineering, supra*, 883 F. Supp. at 490
  (C.D. Cal. 1995) ("Regrettably, however, lawyers are the principal abusers of what Judge Rymer

24  referred to as a "hybrid" form of ex parte communication: a request for action by the court made
  outside the framework of the rules. These are usually captioned, 'Ex parte Application,' 'Ex parte

25  Motion,' or 'Ex parte Request.'  They contain no notice of hearing, though they often ask the court
  to hold a hearing urgently. They purport to have been served on the other side, and, under the local

26  rules of this district, they contain a declaration of counsel stating that he or she notified the
  opposing party, usually by telephone, and that the opposing party does or does not oppose the

27  motion. The court either permits the opposing party to file opposing papers, or it calendars oral
  argument that is heard urgently, often by telephone conference call.")

28

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR A TRO

1   underlying purpose of preserving the *status quo* and preventing irreparable harm just
2   so long as is necessary to hold a hearing, and no longer. *Id.* at 438-39 (1974)
3   (internal citation omitted).

4         This is precisely the position espoused by the Ninth Circuit. Specifically, the
5   Court has repeated stated that where "a party seeks mandatory preliminary relief that
6   goes well beyond maintaining the *status quo pendente lite*, courts should be
7   extremely cautious about issuing a preliminary injunction." *Stanley v. University of*
8   *Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994) (*quoting Chalk v United*
9   *States Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)).

10        Here, Pringle does not establish any need emergency or irreparable harm. To
11  the contrary, Pringle relies on "unsupportable allegations," which if "made in
12  regular noticed motions, . . . [could] be neutralized by a well-prepared rebuttal."
13  *Mission Power Engineering Co.*, 883 F. Supp. at 491. Far from invoking a sense of
14  urgency, Pringle's allegations tell a story of patient "gamesmanship." *Id.* at 493.
15  For eleven months, he witnessed the success of "I Gotta Feeling" before even
16  contacting the Defendants. *See* Pringle Decl., ¶ 12. Even when he finally surfaced,
17  Pringle claimed no emergency or irreparable harm—to the contrary, he engaged in
18  protracted settlement discussions in an effort to obtain monetary compensation for
19  the alleged of his work. Cenar Decl., ¶¶ 1-2. Indeed, even after these discussions
20  ended in September 2010, he did not file his original complaint for four weeks and
21  waited an additional four weeks to seek injunctive relief. It was not until
22  Thanksgiving week, eighteen months after "I Gotta Feeling" debuted that Pringle
23  felt the need for extraordinary relief that only an emergency would justify.

24        Indeed, the evidence of gamesmanship goes far beyond the timing of
25  Pringle's application. Pringle has repeatedly refused to provide Defendants with the
26  actual work he claims was infringed. *See* Cenar Decl., ¶ 3. Indeed, Pringle and his
27  counsel have changed their story numerous times since May 2010 as to what exactly
28  the underlying work entailed. Pringle's counsel has likewise been less than

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1  forthright concerning this *ex parte* application, and, indeed, has failed even to serve

2  the majority of the Defendants with the First Amended Complaint he claims was

3  infringed.  *Id.*

4      There is no emergency.  Plaintiff does not allege Defendants are doing

5  anything different now than they have been doing for the past eighteen months

6  Pringle does not allege any facts that would justify the court's extraordinary power

7  in the absence of an adversarial hearing.  To the contrary, he has brought his ex

8  parte application at his leisure, in hopes of not having his "unsupportable

9  allegations" challenged due to the inauspicious timing of his application.

10  **C.**    **If this Court Grants Pringle's Application, Pringle Must Post a Bond**

11

12      Federal Rule of Civil Procedure 65(c)requires a plaintiff to post security

13  before a temporary restraining order may issue.  While the Rule grants courts

14  "discretion in determining amount of the bond to be posted," *Miller v. LeSea*

15  *Broadcasting, Inc.*, 896 F.Supp. 889, 895 (E.D. Wis. 1995), [b]ecause an error in

16  setting the bond too high is not serious, the district courts should err on the high side

17  when setting bond." *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F.

18  Supp. 2d 1065, 1078 (E.D. Wis. 2007) (*citing Mead Johnson & Co. v. Abbott Labs.*,

19  201 F.3d 883, 888 (7th Cir. 2000)).  "This bond requirement . . . assures the

20  enjoined party that it may readily collect damages from the funds posted or the

21  surety provided in the event that it was wrongfully enjoined, without further

22  litigation and without regard to the possible insolvency of the assured." *Continuum*

23  *Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989).

24      This is exactly the type of case for which security is meant to provide

25  assurance and protection.  Plaintiff claims to be an "unknown singer/songwriter."

26  He seeks to enjoin any use, performance, or reproduction of Defendants "Grammy

27  award-winning, record-breaking, mega-hit single."  Plaintiff has everything to gain

28  and little to lose.  Defendants, on the other hand, stand to lose a fortune if they are

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1    wrongfully enjoined.

2        In light of the policy behind Rule 65(c), Defendants respectfully request that

3    the Court require Plaintiff to post security in the amount of $15,000,000.  This

4    amount should cover costs and pecuniary damages for being wrongfully enjoined.

5    Defendants will provide further proof of costs and damages as required..

6    **III.    CONCLUSION\**

7        For the foregoing reasons, Defendants respectfully request the Court deny

8    Plaintiff's Ex Parte Application for a temporary restraining order.

9

10

11   Dated:  November 23, 2010            **BRYAN CAVE LLP**
                                          Kara Cenar
12                                        Jonathan Pink

13

14                                        By:  _/s/ Jonathan Pink_
                                               Jonathan Pink
15                                        Attorneys for Defendant
                                          WILLIAM ADAMS, JR.; STACY
16                                        FERGUSON; ALLAN PINEDA; and
                                          JAIME GOMEZ, all individually and
17                                        collectively as the music group The Black
                                          Eyed Peas
18

19

20

21

22

23

24

25

26

27

28

3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414
BRYAN CAVE LLP