O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| Bryan Pringle, | CASE NO. SACV 10-1656-JST (RZx) |
|---|---|
| Plaintiff, | |
| vs. | **ORDER GRANTING DEFENDANTS'** |
| William Adams, Jr. et al., | **MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

## I. INTRODUCTION

Before the Court is a Motion for Summary Judgment filed by Defendants David Guetta, Frederic Riesterer, and Shapiro, Bernstein & Co., Inc. (collectively, "Moving Defendants") (Mot., Doc. 159.) Moving Defendants assert several bases for summary judgment. Moving Defendants also assert that Pringle's claims should be dismissed as a sanction for spoliation of evidence. Plaintiff Bryan Pringle ("Pringle") filed an Opposition on December 19, 2011. (Opp'n, Doc. 195.) Moving Defendants filed a Reply on January 9, 2012. (Reply, Doc. 222.) Having heard oral argument and read and considered the parties' papers, the Court GRANTS Moving Defendants' Motion for Summary Judgment. The Court also concludes that dismissal is an appropriate sanction for Pringle's willful spoliation of evidence.

## II. BACKGROUND

In 1998, Pringle wrote and recorded a song entitled "Take a Dive." (Statement of Additional Facts ("SAF") ¶ 115, Doc. 196.) He registered a claim for "Take a Dive" and several other original songs he wrote and recorded by submitting a CD entitled *Dead Beat Club: 1998* to the United States Copyright Office, and the Register of Copyrights issued a Certificate of Registration for *Dead Beat Club: 1998* on April 29, 1998. (SAF ¶¶ 117-18.) Pringle then allegedly made several derivative versions of "Take a Dive," including a dance version (" 'Take a Dive' (Dance Version)") that is central to this case. (SAF ¶ 119.) "Take a Dive" (Dance Version) includes an eight-bar "guitar twang sequence" that is not present in the original version. (SAF ¶¶ 120-21.) After he allegedly created "Take a Dive" (Dance Version) in 1999, Pringle backed up his creation file onto an NRG image file. (SAF ¶ 128.) The NRG file is a disc image file, which contains a series of separate sound files for each of the individual instruments that appear in "Take a Dive" (Dance Version). (Statement of Uncontroverted Facts ("SUF"), ¶ 68, Doc. 160.) Pringle claims

that in late 2000, the music equipment and hard drives he used to create "Take a Dive" (Dance Version) were stolen.  (SUF ¶ 67.)

In 2009, Defendant The Black Eyed Peas released the song "I Gotta Feeling."  (SAF ¶ 138.)  From August 21 to September 8, 2009, Defendants made available on a website named Beatportal.com the "stems" or component parts of "I Gotta Feeling," including the guitar twang sequence.  (SUF ¶¶ 24-25; SAF ¶ 194.)  In January 2010, Pringle upgraded to a new hard drive (the "2010 Hard Drive").  (SAF ¶ 196.)  Then, in February 2010, Pringle allegedly heard "I Gotta Feeling" and began to investigate his infringement claim.  (Pringle Tr. 63:16-19, Dickstein Decl., Ex. E, Doc. 161-5.)  When Pringle first heard "I Gotta Feeling," he allegedly believed that the song infringed his "Take a Dive" (Dance Version). (SAF ¶ 139.)

On July 23, 2010, before this action was filed, counsel for the Black Eyed Peas sent a lengthy email to Pringle's counsel, expressing concern about the creation dates of two CDs—"Take a Dive" and "Take a Dive" (Dance Version)—sent to her on May 21, 2010. (Dickstein Decl., Ex. K, Doc. 161-11.)   The email specifically stated:

> Given that you have advanced a claim on [Pringle's] behalf I am sure you have already advised Mr. Pringle of his duty to preserve all computer records.  Out of caution, before Mr. Pringle is confronted with the topic of potential altered dates etc [sic], it is likely appropriate for you to have an independent forensic computer person image his entire hard drive etc. to capture and preserve everything on his system before you confront him.  It will be something we will necessarily request in discovery should this case ever reach a filed action.
>
> [. . .]

3

> On behalf of my clients' [sic], as I am sure you understand, I have to formally make a request for preservation of evidence. Please consider this email my formal request for preservation of evidence.

(*Id.*) The next day, Defendants re-sent their preservation request through formal correspondence. (*Id.*, Ex. J.) Then, on July 28, 2010, Defendants' counsel reiterated their request for preservation of evidence of Pringle's computer files, and again expressed concern about "serious issues of whether that date [of creation] was actual or fabricated." (*Id.*, Ex. K.) In a response email, Pringle's counsel wrote "[w]e are preserving evidence, of course . . . ." (*Id.*)

On October 28, 2010, Plaintiff filed this action, and on November 15, 2010, Pringle submitted a copyright registration application for "Take a Dive" (Dance Version), seeking registration for both the sound recording and the musical composition embodied in the guitar twang sequence, the only new material added to "Take a Dive" (Dance Version). (SUF ¶ 35.) The United States Copyright Office registered the sound recording in "Take a Dive" (Dance Version), but denied Pringle's application to register a copyright in the musical composition of the guitar twang sequence "[b]ecause [the] work does not contain enough original musical authorship to be copyrightable." (SUF ¶ 36; SAF ¶ 204.)

Pringle filed a First Amended Complaint ("FAC") on November 19, 2010, asserting a claim for copyright infringement against all Defendants. (FAC, Doc. 9.) On November 23, 2010, Defendants filed an expert report explaining that "a common method for fraudulently 'backdating' the date and time stamp for files . . . can be as simple as changing the clock on your computer" and that it would therefore "be vital to review the original computer [that] managed the burning of the CD in the first instance." (Laykin Decl. ISO Opp'n to TRO, ¶ C4(i),(o), Doc. 22-2.)

1        On December 21, 2010, Pringle delivered to his expert, David Gallant, a CD-ROM
2   hand-marked "PROMO PHOTOS / 1999 ENSONIQ.NRG FILES" ("the NRG Disc").
3   (Gallant Decl. ¶ 4, Doc. 193.)  This CD contained 134 digital photographs, the files for
4   which were dated September 8, 1999, and the NRG files dated August 22, 1999.  (*Id.*
5   ¶ 5(a)).
6        In January 2011, Pringle disposed of the 2010 Hard Drive, although he cannot recall
7   whether he threw it away or sent it back to the manufacturer.  (Pringle Tr. 33:23-37:13.)
8   Before disposing of the hard drive, Pringle made a copy of "relevant files," but did not
9   create a backup copy of the entire hard drive.  (*Id.* 49:8-20, 50:16-51:4.)
10       On February 14, 2011, Defendants demanded inspection of Pringle's computer
11  equipment used from 2009 to the present.  (Dickstein Decl., Ex. N at 3.)  On February 18,
12  2011, Defendants stated in the Joint 26(f) Report that "they ha[d] been unable to prepare a
13  comprehensive discovery plan because Plaintiff's counsel refused to engage in a
14  meaningful discussion of the nature of extent of Mr. Pringle's electronically stored
15  information (ESI)."  (Joint 26(f) Report at 7, Doc. 110.)  The Report further stated that
16  "Mr. Pringle's ESI will likely play a crucial role in discovery in this action, as it goes
17  directly to the threshold issues of Plaintiff's ownership of a valid copyright, including, the
18  dates and manner of Plaintiff's alleged creation of 'Take a Dive' and 'Take a Dive'
19  Derivative . . . ."  (*Id.*)
20       On July 8, 2011, Pringle's counsel wrote in a letter: "To the extent you seek
21  metadata associated with the creation of any sound recording by Mr. Pringle, that would
22  require an inspection of Mr. Pringle's computer hard drive, which we have offered to
23  provide for inspection at the offices of our computer expert."  (Dickstein Decl., Ex. M at
24  21.)  Then, on July 27, 2011, Defendants' counsel wrote to Pringle's counsel to arrange
25  inspection of "Mr. Pringle's computer hard drive(s) that he had used from 2009 to the
26  present, and all backups thereof."  (*Id.*, Ex. F at 13.)  Pringle's counsel responded that none
27  of the hard drives Pringle had used in 2009, 2010, or 2011 were available.  (*Id.*, Ex. F. at 9-
28

1  10.) The 2009 hard drive was replaced as part of a practice of upgrading hard drives every
2  six to twelve months, and the hard drive in use in 2011 (the "2011 Hard Drive") had been
3  sent to Western Digital for repair in July 2011. (*Id.*) Although Pringle copied data from
4  the 2011 Hard Drive and provided it to Mr. Gallant, his expert, some of the files were
5  unavailable because they were corrupted. (Gallant Decl. ¶ 13, Doc. 193; Pringle Decl.
6  ¶ 250, Doc. 198.) At the time of inspection by Defendants' expert, Plaintiff's counsel only
7  offered to make the NRG Disc and an ASR-10 keyboard available. (*Id.*) Notably,
8  Pringle's counsel did not explain what had happened to the 2010 Hard Drive. (Dickstein
9  Decl., Ex. F at 1.)
10  On November 17, 2011, Moving Defendants moved for summary judgment on
11 several bases. Moving Defendants also assert that Pringle's claims should be dismissed as
12 a sanction for spoliation of his Hard Drives.

### III. SUMMARY JUDGMENT

#### a. Legal Standard

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted). The burden then shifts to the non-moving party to "cit[e] to particular parts of materials in the record" supporting its assertion that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

**b. Discussion**

In paragraph 30 of the FAC, Pringle defines "Take a Dive" to refer to "the derivative version ["Take a Dive" (Dance Version)]." (FAC ¶ 30.) Thereafter, Pringle's FAC asserts that "Defendants . . . gained access to Plaintiff's copyrighted song 'Take a Dive,' and then subsequently sampled and copies additional, substantial original elements of 'Take a Dive,' without Plaintiff's permission, when they wrote, recorded, performed and made derivative works of their song 'I Gotta Feeling.'" (FAC ¶ 62.) Therefore, from the FAC, it appears that Pringle alleges both sampling and other copyright infringement of "Take a Dive" (Dance Version).

However, in his declaration in opposition to summary judgment, Pringle states:

> I do not contend, nor have I ever contended, that the Defendants sampled the "guitar twang sequence" for "I Gotta Feeling" directly out of the fully played version of "Take a Dive" (Dance Version) presented to the Court. Rather my claim, is that the Defendants had access to my music and manipulated the samples to which they had access, to achieve

7

> the "guitar twang sequence" that is heard in the finished version of "I Gotta Feeling."
>
> I had many derivative versions of "Take a Dive" which contained the "guitar twang sequence" soloed out in the song, and provided samples of the same directly to. [sic] [Defendants] Guetta and Garraud, at least as far back as 1999 to 2003.

(Pringle Decl. ¶¶ 142-43.) Therefore, it is unclear whether Pringle asserts that "I Gotta Feeling" infringes "Take a Dive", "Take a Dive" (Dance Version), or some other undisclosed "derivative" version of the song. However, "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made . . . ." 17 U.S.C. § 411(a). "Copyright registration is not a prerequisite to a valid copyright, but it is a prerequisite to a suit based on a copyright." *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998) (citation omitted). Here, Plaintiff has presented evidence of registration of only two songs: "Take a Dive" and "Take a Dive" (Dance Version). Accordingly, these are the only two works on which Pringle's copyright suit can be based. Therefore, to the extent Pringle claims copyright infringement as to an unidentified "derivative" version of "Take a Dive," his claim fails.

### i. Take a Dive (Dance Version)

The Court concludes that Pringle's registration of "Take a Dive" (Dance Version) is invalid, and he therefore lacks standing to sue for infringement of that work. "In order to obtain a copyright registration, an applicant must deposit as a part of his application a 'copy' or 'copies' of the work." *Kodadek*, 152 F.3d at 1211 (citing 17 U.S.C. § 408(b)(1) and (2)). The Ninth Circuit "[has] stated that the registration deposit requirement permits

'bona fide copies of the original work only . . . ." *Kodadek*, 152 F.3d at 1211 (citation omitted). This is because "[t]he Copyright Act does not contemplate the copyrighting of a now non-existent original on the basis of a tendered reconstruction." *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th Cir. 1986). "This means that any 'copy' deposited as part of an application for a certificate of copyright registration must be virtually identical to the original *and* must have been produced by directly referring to the original." *Kodadek*, 152 F.3d at 1212. A subsequent copy meets the "bona fide copy" requirement, but only if that copy is a copy that was ultimately produced by reference to the original. *Id.*

Here, Pringle deposited an MP3 sound file with his November 2010 application for registration of "Take a Dive" (Dance Version). (SUF ¶ 86.) This MP3 file was not created in 1999, nor was it directly copied from a file that was created in 1999. Rather, it was created later using the separate sound files for each individual instrument contained on the NRG file. (*See* SUF ¶¶ 68, 90.) As described by Pringle in his declaration, this process closely resembles a "reconstruction" of the original, rather than the creation of a bona fide copy. (*See generally* Pringle Decl. ¶¶ 159-73.) Although Pringle likens the process to loading a tape reel onto a reel-to-reel tape recorder machine and pushing play, the instructions Pringle provided to Defendants' expert reveal a series of choices that one who wishes to hear the song has to make in order to correctly hear the song as it allegedly existed originally. (*Id.* ¶¶ 162, 168, Ex. 47.) The key difference is *not* that there are many more steps to playing the NRG file on an Ensoniq ASR-10 keyboard than to loading a tape into a tape recorder. Rather, the distinction is that these instructions contain not only guidance on operating an Ensoniq ASR-10 keyboard, but on how to load the files and what decisions to make at each step of the way to play the song properly. For example, step 6 provides an instruction on how to "lower[] or 'mute[]' all the wavesamples in this instrument, which allows isolation of the 'guitar twang sequence' wavesamples by raising the volume of only the wavesamples needed for the 'guitar twang sequence' to play." (*Id.* Ex. 47 at 2.) If someone were to have only the NRG file and knew how to operate an

1  Ensoniq ASR-10 keyboard, these instructions suggest that he would still not be able to
2  recreate the song without additional guidance from Pringle.
3      Accordingly, the Court concludes that the MP3 created through this process and
4  deposited with the United States Copyright Office is not a bona fide copy. Thus, Pringle
5  "did not properly receive a copyright registration in ["Take a Dive" (Dance Version)] and
6  his infringement action [on that basis] is foreclosed." *Kodadek*, 152 F.3d at 1212.

### ii.   *Take a Dive (Original Version)*

9      It is undisputed that Pringle has a valid copyright in the original version of "Take a
10 Dive" and has standing to sue for infringement of that copyright. To establish copyright
11 infringement of Take a Dive, Pringle must show that (1) defendants had access to his work
12 and (2) IGF and TAD are substantially similar in protected expression. *See Rice v. Fox
13 Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). "Where a high degree of access is
14 shown, [the Ninth Circuit] require[s] a lower standard of proof of substantial similarity."
15 *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004). With respect to "Take a Dive,"
16 Plaintiff has failed to provide any evidence of access. Pringle's declaration and that of his
17 brother provide some facts relating to Defendants' access to "Take a Dive" (Dance
18 Version), but are completely devoid of any reference to "Take a Dive." (SAF ¶¶ 129-37.)
19 Jeffrey Pringle stated that Michael Brown played cuts from the *Dead Beat Club* album, but
20 this statement omits any reference to "Take a Dive." (SAF ¶136.) Furthermore, Jeffrey
21 Pringle's declaration lacks a showing of personal knowledge as to what music Michael
22 Brown played on the radio. *See* Fed. R. Evid. 602.
23     Even if Pringle were to have shown some modicum of access, he fails to provide
24 any evidence of substantial similarity between the protectable elements of "I Gotta
25 Feeling" and "Take a Dive." The declaration of Pringle's expert, Alex Norris, goes into
26 great detail about the striking similarity between "Take a Dive" (Dance Version) and "I
27 Gotta Feeling." However, when he compares "Take a Dive" and "I Gotta Feeling," he
28

notes only minimal similarity and addresses only *non-protectable* elements. (Norris Decl. ¶¶ 11, 45, Doc. 192.) While Norris does state that "it appears to be very unlikely, if not impossible, that the similarities of 'Take a Dive' [dance and original versions, respectively] and 'I Gotta Feeling' (Tracks #3 and #4) are incidental or coincidental" (*id.* ¶ 11), it is unclear whether he concludes that the original version of "Take a Dive," standing alone, is substantially similar to "I Gotta Feeling." In fact, it appears from the rest of the declaration that Norris concludes that "Take a Dive" (Dance Version) is a derivative of "Take a Dive," and "Take a Dive" (Dance Version) and "I Gotta Feeling" are strikingly similar. (*See id.* ¶¶ 6, 43.) However, it does not follow from these conclusions that the original version of "Take a Dive" and "I Gotta Feeling" are strikingly similar. In fact, Norris explains that "the bass drum pattern of [the dance version] creates a rhythmic feel that is much more similar to [the "I Gotta Feeling" tracks] than [the original version] is, which highlights the similarities of [the dance version] to [the "I Gotta Feeling" tracks]." (*Id.* ¶ 43.)

Therefore, to the extent that Norris has identified any similarity, "no reasonable juror could find substantial similarity" between "Take a Dive" and "I Gotta Feeling." *See Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006). Accordingly, the Court concludes that Pringle's claim for infringement of the original version of "Take a Dive" fails. The Court concludes that Pringle has met the registration prerequisite to a copyright suit only with respect to the original version of "Take a Dive." However, because he has not provided evidence of access or substantial similarity between "Take a Dive" and "I Gotta Feeling," his copyright claim fails. Accordingly, the Court GRANTS Moving Defendants' Motion for Summary Judgment.

## IV. SPOLIATION

### a. Legal Standard

A Court "can sanction a party who has despoiled evidence" under its "inherent power . . . to levy sanctions in response to abusive litigation practices." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). "Dismissal is an available sanction when 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Id.* (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). "Before imposing the 'harsh sanction' of dismissal, however, the district court should consider the following factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Leon*, 464 F.3d at 958 (citing *Anheuser-Busch*, 69 F.3d at 348). Additionally, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." *Id.* (citation and internal quotation marks omitted).

### b. Discussion

#### i. Bad Faith

"A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon*, 464 F.3d at 959 (citation and internal quotation marks omitted). "Moreover, because the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of

12

irrelevance as to the destroyed documents." *Id.* (citation and internal quotation marks omitted).  Here, the 2010 and 2011 Hard Drives  (collectively, "Hard Drives") were at least potentially relevant and Pringle was under a duty to preserve when the Hard Drives were intentionally destroyed.

### 1. Duty to Preserve

"The duty to preserve documents attaches when a party should have known that the evidence may be relevant to future litigation." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d. 1060, 1068 (N.D. Cal. 2006) (citation and internal quotation marks omitted). Pringle was under a duty to preserve beginning July 23, 2010, when Defendants' counsel explained her concern that the creation date of the NRG file had been altered and formally requested that Pringle's counsel preserve evidence.  It is abundantly clear from the allegation of back-dating and the suggestion that a forensic expert image his entire computer before confronting Pringle about the back-dating issue that the request referred to Pringle's current computer and Hard Drives.  Pringle's counsel assured Defendants' counsel that he would communicate the duty to preserve to his client, and Pringle appears to have appreciated that duty, as he copied some data from the 2011 Hard Drive and delivered it to his expert before sending the Hard Drive to Western Digital.  Therefore, the Court concludes that Pringle was under a duty to preserve his Hard Drives.

### 2. Potential Relevance

One of the two elements required for a prima facie case of copyright infringement is ownership of a valid copyright.  *Range Rd. Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012).  "To qualify for copyright protection, a work must be original to the author.  Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works) and that it possesses some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*,

1  *Inc.*, 499 U.S. 340, 345 (1991) (citation and internal quotation marks omitted).  As the
2  Ninth Circuit has recognized, a defense to a copyright claim can "hinge on [defendant's]
3  attempt to demonstrate that [plaintiff] did not own a valid copyright." *Twentieth Century*
4  *Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 876 (9th Cir. 2005).  Therefore, a defense
5  can also hinge on whether the work was independently created by the plaintiff.
6      Here, the only evidence that Pringle independently created "Take a Dive" (Dance
7  Version) in 1999 is the NRG Disc, which shows a 1999 creation date.  However,
8  Defendants have submitted expert declarations stating that "[t]ime and date stamps on files
9  are easily modified," and so "without access to the computer on which the NRG file was
10 saved, and the computer from which the NRG file was burned to the NRG disc," the "date
11 on which the NRG file was saved to the NRG disc" cannot be authenticated.  (Laykin
12 Decl. ISO Opp'n to SJ, ¶¶ 21-22, Doc. 164.)  Here, the computer and the hard drives
13 allegedly used to create "Take a Dive" (Dance Version) in 1999 no longer exist because
14 Pringle claims they were stolen in 2000.  Even assuming the veracity of his assertion, the
15 fact remains that there is no surviving evidence of independent creation in 1999, besides
16 the NRG Disc.  This fact alone renders Pringle's 2010 and 2011 Hard Drives potentially
17 relevant either to rule out or confirm a later creation date.
18     Additional evidence suggests that the 2010 Hard Drive in particular carries even
19 greater potential relevance because it is plausible that Pringle copied the "guitar twang
20 sequence" from Defendants.  Defendants' expert states that the guitar twang chord samples
21 that exist in Pringle's NRG file are essentially identical to the isolated guitar twang stem
22 that was posted to Beatportal.com.  (Geluso Decl. ¶ 13, Doc. 162.)  Once Defendants
23 released the "stems" from "I Gotta Feeling," including the "guitar twang sequence," on
24 Beatportal.com in August 2009, those stems continued to be available on various Internet
25 websites even after they were no longer available on Beatportal.com.  (Geluso Rebuttal
26 Decl. ¶ 35, Doc. 217.)  Even Pringle admits that the "guitar twang sequence" is widely
27 available on the Internet.  (Pringle Tr. 185:11-16.)  In fact, Pringle obtained from a
28

14

1  Beatport.com re-mix one of these "stems" consisting of the lead vocals in "I Gotta
2  Feeling," and inserted it into "Take a Dive" to create a comparison of the two songs.
3  (Geluso Rebuttal Decl. ¶¶ 32-35, 36; Pringle Decl. ¶ 98.)  Pringle admits that the music he
4  downloaded for the comparisons would have been on either the 2010 Hard Drive or the
5  2011 Hard Drive.  (Pringle Tr. 191:16-23.)  This shows that Pringle had both the access
6  and ability to insert stems originally available on Beatport.com into his own music.
7  Furthermore, Defendants' expert stated that even if Pringle had attempted to delete this
8  information from either Hard Drive, a forensic inspection would likely have yielded some
9  information.  (Geluso Rebuttal Decl. ¶ 35.)  Thus, the Hard Drives Pringle used at the time
10 that he had access to these stems clears the "potentially relevant" hurdle by a mile.

11     Pringle's evidence that the 2010 and 2011 Hard Drives are *not* potentially relevant
12 consists of his own broad denials of having copied Defendants' music (*see* Pringle Decl.
13 ¶ 99), his own denial that he ever downloaded anything from Beatportal.com (*Id.* at ¶¶
14 104-07), his own declaration stating that it would be technologically impossible for him to
15 have taken an MP3 downloaded from Beatportal.com and inserted it into his music (*id.* at
16 ¶ 117), and an expert declaration questioning the plausibility of the Defendants'
17 backdating theory (Frederiksen-Cross Decl., ¶¶ 21-22, Doc. 189).  Pringle's own
18 declaration cannot render the 2010 and 2011 Hard Drives irrelevant to the question of
19 whether he misrepresented the date of creation.  To suggest otherwise is entirely circular,
20 as the ultimate question is one about Pringle's credibility.

21     Furthermore, Pringle's attempt to poke holes in Defendants' backdating theory
22 entirely misses the mark.  For example, Pringle takes issue with the fact that Defendants'
23 expert, Paul Geluso, ignores "equally viable alternatives" to the backdating theory to
24 explain the similarity between "Take a Dive" (Dance Version) and "I Gotta Feeling."
25 (Pringle Decl. ¶ 101.)  But the Defendants need not show positively that Pringle backdated,
26 only that the Hard Drives are potentially relevant to their defense.  In fact, Pringle's
27 statement amounts to an admission that Geluso's theory is but one of many "equally viable
28

15

alternatives" that the Defendants were entitled to explore through discovery.  Accordingly, Pringle's intentional disposal of his 2010 and 2011 Hard Drives amounts to willful spoliation of relevant evidence.

### ii. *Prejudice to Defendants*

"The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citation and internal quotation marks omitted).  The Ninth Circuit has "found prejudice when a party's refusal to provide certain documents forced [the non-spoiling party] to rely on incomplete and spotty evidence." *Id.*

As discussed above, the creation date of the NRG file is at the heart of the defense in this case.  While Defendants certainly have other defenses, the creation date is fundamental to the issue of whether Pringle or Defendants created their respective songs first.  There is no question that Pringle's spoliation "threatened to distort the resolution" of the case by forcing Defendants to rely on less direct evidence to defend themselves.  While the Court ultimately concludes that there are independent grounds for granting summary judgment to Defendants, if the 2010 Hard Drive had shown that the creation date was altered, the case likely would have been either voluntarily dismissed or quickly dismissed on summary judgment at that point.  Therefore, the Court concludes that Pringle's spoliation of his Hard Drives prejudiced Defendants.

### iii. *Lesser Sanctions*

The Court may dismiss the case based on spoliation of evidence where (1) less drastic sanctions would be inappropriate, (2) the Court implemented alternative sanctions before ordering dismissal, and (3) the Court warned the party of dismissal before ordering dismissal. *Leon*, 464 F.3d at 960.  As to the first criterion, lesser sanctions are not appropriate because "fashioning a jury instruction in favor of [Defendants] would leave

Defendants equally helpless to rebut any material that Plaintiff might use to overcome the presumption." *Id.* (internal quotation marks omitted). Similarly, a ruling excluding Plaintiff's evidence of the creation date is an effective dismissal. The second and third criteria are inapplicable here because Plaintiff disposed of his Hard Drives before the Court could compel discovery, order lesser sanctions, or warn Plaintiff. Accordingly, the Court concludes that lesser sanctions are unavailable.

### *iv. Remaining Factors*

The public interest in expeditious resolution of litigation and the Court's need to manage its dockets both favor dismissal. The only factor weighing against dismissal is the policy favoring disposition of cases on their merits. However, this is insufficient to outweigh the other four factors. *Leon*, 464 F.3d at 960-61. Accordingly, the Court concludes that dismissal is an appropriate sanction for Pringle's willful despoliation of his Hard Drives.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Moving Defendants' Motion for Summary Judgment. Alternatively, the Court concludes that dismissal is an appropriate sanction for Pringle's spoliation of evidence.

DATED: March 30, 2012

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE