O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRIAN PRINGLE,

      Plaintiff,

      vs.

WILLIAM ADAMS, JR., et al.

      Defendants.

CASE NO. SACV 10-1656-JLS (RZx)

**ORDER (1) GRANTING MOTION FOR ATTORNEYS' FEES (Doc. 324); AND (2) SETTING AWARD OF FEES AND COSTS**

1

## I.      Introduction

Before the Court are the following matters: (1) a motion for attorneys' fees incurred on appeal, filed by Guetta Defendants and Adams Defendants (Doc. 324); and (2) a determination of the amount of attorneys' fees and costs to award Defendants for proceedings before this Court and on appeal.  (*See* Doc. 323.)[1] Having considered the briefing, and having taken the matter under submission, the Court GRANTS Guetta Defendants' and Adams Defendants' motion for attorneys' fees incurred on appeal.  The Court awards Defendants their attorneys' fees for proceedings before this Court and on appeal as follows:  $776,362.75 in attorneys' fees to Adams Defendants; $1,343,772.12 in attorneys' fees to Guetta Defendants; and $50,151.19 in attorneys' fees to UMG Recordings and Interscope Records.  The Court does not award any of the attorneys' fees billed by McPherson Rane.  The Court awards the full costs requested by Defendants, in the amount of $351,068.20.

## II.      Factual Background and Procedural History

In 1998, Plaintiff Brian Pringle wrote and recorded a song entitled "Take a Dive" and obtained a Certificate of Registration for the song from the Copyright Office.  (*See* MSJ Order, Doc. 252.)[2]  In 1999, Pringle allegedly made a derivative version of "Take a Dive," titled "'Take a Dive' (Dance Version)."  In 2009, the Black Eyed Peas released the song "I Gotta Feeling," which Pringle believed infringed "'Take a Dive' (Dance Version)."

---

[1] The Guetta Defendants are David Guetta; Frederic Riesterer; and Shapiro, Bernstein & Co., Inc. The Adams Defendants are William Adams; Stacy Ferguson; Allan Pineda; and Jaime Gomez, all individually and collectively as the music group The Black Eyed Peas; will.i.am music, llc; Tab Magnetic Publishing; Cherry River Music Co.; Headphone Junkie Publishing, LLC; Jeepney Music, Inc.; and EMI April Music Inc.  As set forth below, the Court previously determined that Guetta Defendants, Adams Defendants, UMG Recordings, Inc. and Interscope Records (collectively, "Defendants") were entitled to attorneys' fees and costs incurred in proceedings before this Court.
[2] The Court summarizes the background it previously set forth in its summary judgment order.

1   In October 2010, Pringle filed this action against the Black Eyed Peas and
2   other individuals and entities associated with "I Gotta Feeling."  Thereafter, Pringle
3   submitted an MP3 of "'Take a Dive' (Dance Version)" to the Copyright Office and
4   obtained a copyright registration for the sound recording.

5   On March 30, 2012, the Court granted summary judgment in favor of certain
6   defendants.  (MSJ Order.  *See also* Doc. 274 (granting summary judgment as to
7   remaining defendants).)  The Court found that the MP3 of "'Take a Dive' (Dance
8   Version)" that Pringle submitted to the Copyright Office was not a bona fide copy,
9   because it was created after "'Take a Dive' (Dance Version)" was created, and
10  because the process in which the MP3 was created closely resembled a mere
11  "reconstruction" of the original.  Because there was no valid registration of "'Take a
12  Dive' (Dance Version)," the Court found there was no claim for copyright
13  infringement.  As to the original "Take a Dive" song, the Court found that Pringle
14  "failed to provide any evidence of access" to the song; instead, at best, there were
15  only "some facts relating to Defendants' access to 'Take a Dive' (Dance
16  Version)[.]"  The Court further found that even if Pringle had shown "some
17  modicum of access," he failed to provide any evidence of substantial similarity
18  between the protectable elements of "I Gotta Feeling" and "Take a Dive."  Thus, his
19  claim for infringement of "Take a Dive" failed.  The Court alternatively dismissed
20  the action as a sanction for Pringle's willful spoliation of relevant evidence.

21  Pringle appealed the Court's grant of summary judgment.  (Doc. 278.)
22  Pringle also appealed an order sanctioning him pursuant to 28 U.S.C. § 1927 for
23  vexatiously multiplying the proceedings by failing to heed a Court order regarding
24  service on a defendant.  (*Id.  See also* Doc. 126.)

25  Shortly after Pringle filed his appeal, Defendants moved for attorneys' fees
26  and costs under 17 U.S.C. § 505, and for sanctions under Federal Rule of Civil
27  Procedure 11, 28 U.S.C. § 1927, and the Court's inherent powers.  Guetta

28

1  Defendants and Adams Defendants submitted applications for their taxable costs to

2  the Clerk of the Court.  (Docs. 279, 289.  *See also* Docs. 292, 293, 294, 296

3  (objections and replies).)[3]  The Court granted in part and denied in part the motion

4  for attorneys' fees and costs.  (Fee Order, Doc. 302.)  The Court awarded attorneys'

5  fees and costs under 17 U.S.C. § 505, but ordered supplemental briefing as to the

6  amount of fees and costs.  (*See id.*; Supp. Mot., Doc. 304; Supp. Opp'n, Doc. 312;

7  Supp. Reply, Doc. 313.  *See also* Supp. Decls., Docs. 305, 306, 307, 314.)  The

8  Court also denied Defendants' request for sanctions, which Defendants cross-

9  appealed.  (Fee Order; Doc. 308.)  The Court stayed its ruling as to the amount of

10  fees and costs to award pending Defendants' cross-appeal.  (Doc. 315.)

11  On appeal, the Ninth Circuit affirmed this Court's orders.  (Doc. 320.)  The

12  Ninth Circuit held that "the evidence in support of Plaintiff . . . raises only the barest

13  possibility that Defendants had access to 'Take a Dive,' and Plaintiff does not argue

14  that there is a 'striking similarity' between 'Take a Dive' and Defendants' allegedly

15  infringing work."  The Ninth Circuit further held that "Plaintiff's attempt to show a

16  valid copyright in the derivative version of 'Take a Dive' fails because the copy

17  deposited with the U.S. Copyright Office was an impermissible reconstruction."

18  Guetta Defendants and Adam Defendants then moved the Ninth Circuit for an

19  award of attorneys' fees for their successful defense of Pringle's appeal (but not for

20  their own unsuccessful cross-appeal), and moved to have the determination of the

21  amount of any fees to award on appeal transferred to this Court.  The Ninth Circuit

22  ordered that the determination of whether fees should be awarded on appeal, as well

23  as the amount of any such fees, be decided by this Court.  (Doc. 322.)  Thereafter,

24  Guetta Defendants and Adams Defendants refiled their motion, Pringle's opposition,

25

26  _____

27  [3] Defendants state that they "have been advised that the Clerk of Court has deferred these applications for taxable costs to this Court."  (Doc. 304 at 4.)

28

4

1   and their reply on this Court's docket.  (App. Mot., Doc. 324-1; App. Opp'n, Doc.
2   324-8; App. Reply, Doc. 324-9.)

3          Accordingly, the following matters are presently before the Court: (1) Guetta
4   Defendants' and Adams Defendants' motion for fees on appeal; and (2) the amount
5   of fees and costs to award Defendants in proceedings before this Court, as well as
6   the amount of fees, if any, to award to Guetta Defendants and Adams Defendants for
7   Pringle's appeal.

8

9   **III.   Legal Standard**

10          **A.    Attorneys' Fees Under the Copyright Act**

11          "The Copyright Act of 1976, 17 U.S.C. § 505, provides in relevant part that in
12   any copyright infringement action 'the court may . . . award a reasonable attorney's
13   fee to the prevailing party as part of the costs.'"  *Fogerty v. Fantasy, Inc.*, 510 U.S.
14   517, 519 (1994).  In *Fogerty*, the Court endorsed an "evenhanded" approach, under
15   which no distinction is made between prevailing plaintiffs and prevailing
16   defendants.  *Id.* at 534.  However, "attorney's fees are to be awarded to prevailing
17   parties only as a matter of the court's discretion."  *Id.*  The *Fogerty* Court adopted
18   this approach in part because "defendants who seek to advance a variety of
19   meritorious copyright defenses should be encouraged to litigate them to the same
20   extent that plaintiffs are encouraged to litigate meritorious claims of infringement."
21   *Id.* at 527.

22          To guide a court's exercise of discretion, the Court cited the non-exhaustive
23   list of factors identified in *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d
24   Cir. 1986), including "'frivolousness, motivation, objective unreasonableness (both
25   in the factual and in the legal components of the case) and the need in particular
26   circumstances to advance considerations of compensation and deterrence [("the *Lieb*
27   factors")].'"  *Fogerty*, 510 U.S. at 534 n.19.  The Ninth Circuit has similarly stated

28

that a court's exercise of discretion might include consideration of "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614-615 (9th Cir. 2010). The Ninth Circuit has emphasized, however, that the overarching concern is faithfulness to the purposes of the Copyright Act. *Id. See also Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). Notably, not all *Lieb* factors must be met to merit an award of attorneys' fees. *See id.* Furthermore, "a court's discretion may be influenced by the plaintiff's culpability in bringing or pursuing the action, but blameworthiness is not a prerequisite to awarding fees to a prevailing defendant." *Id.*

### B.   Amount of Attorneys' Fees

The party requesting attorneys' fees must submit evidence in support of the number of hours and the hourly rates claimed. *See Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). The party opposing the request for attorneys' fees "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995). Hours that are "excessive, redundant, or otherwise unnecessary" may be excluded. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Likewise, hours that are billed in block-format may be reduced. *See Lahiri v. Universal Music and Video Dist. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010); *Welch*, 480 F.3d at 948. When faced with a "massive fee application," the Court may make "across-the-board percentage cuts" instead of making an hour-by-hour analysis. *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). The Court may make a small across-the-board reduction based on its exercise of discretion and

1  without a more specific explanation.  *See Moreno v. City of Sacramento*, 534 F.3d

2  1106, 1112 (9th Cir. 2008); *Lahiri*, 606 F.3d at 1223.  Billing rates are "established

3  by reference to the fees that private attorneys of an ability and reputation

4  comparable to that of prevailing counsel charge their paying clients for legal work

5  of similar complexity."  *Welch*, 480 F.3d at 946.

6

7  **IV.   Discussion**

8          The Court first addresses whether Guetta Defendants and Adams Defendants

9  should be awarded attorneys' fees in defending Pringle's appeal, and finds that they

10  are entitled to such fees.  The Court next addresses the amount of attorneys' fees

11  requested by all Defendants for proceedings before this Court, as well as the amount

12  of attorneys' fees requested by Guetta Defendants and Adams Defendants for

13  proceedings on appeal.  The Court lastly addresses Defendants' requests for costs.

14

15          **A.     Attorneys' Fees for Pringle's Appeal**

16          Guetta Defendants and Adams Defendants seek an award of attorneys' fees

17  incurred in defending against Pringle's appeal.  The Court evaluates the *Lieb* factors

18  to determine whether to award the requested fees.  (*See* Fee Order at 6-8.)  As to the

19  first factor—degree of success obtained—Guetta Defendants and Adams Defendants

20  obtained complete success in defending against Pringle's appeal.  As to the second,

21  third, and fourth factors—frivolousness, motivation/bad faith, and objective

22  unreasonableness—Guetta Defendants and Adams Defendants argue that this Court

23  previously recognized Pringle's suit as "frivolous, brought in bad faith, and

24  objectively unreasonable."  (App. Mem. at 15-16, Doc. 324-1.)  Pringle argues, in

25  effect, that because the Ninth Circuit's mandate did not use exactly the same

26  language as this Court's order, his appeal was not frivolous, objectively

27  unreasonable, or brought in bad faith.  (*See* App. Opp'n at 8-10.)  The Court does

28

1  not find the argument persuasive.  Because the Ninth Circuit affirmed on the

2  grounds articulated in this Court's underlying orders, the Court concludes Pringle's

3  arguments on appeal were similarly meritless.  Finally, as to the fifth factor—the

4  need to advance considerations of compensation and deterrence—for the reasons

5  discussed in the Court's prior order awarding attorneys' fees, the Court finds this

6  factor supports an award of attorneys' fees incurred on appeal.  (*See* Fee Order at 8.)

7  Thus the Court finds that Guetta Defendants and Adams Defendants are entitled to

8  attorneys' fees incurred in defending against Pringle's appeal.

9

10      **B.      Amount of Attorneys' Fees**

11      The Court next addresses the reasonableness of the attorneys' fees requested

12  by Defendants.  The Court first addresses the billing rates of the timekeepers,

13  followed by the number of hours billed.

14

15              **1.      Billing Rates**

16      Pringle does not challenge any particular timekeeper's hourly rate.  (*See*

17  Supp. Opp'n at 2-3.)  Defendants provide evidence of billing rates in their

18  timekeepers' respective communities, and declarations as to why their rates—many

19  of which are discounted—are reasonable.  (*See* Docs. 281, 282, 283, 284, 288.)

20  Having reviewed the timekeepers' rates and the evidence in support of the rates, and

21  considering the complexity of this case, the Court concludes that the rates are

22  reasonable.[4]  *See Welch*, 480 F.3d at 946.

23

24

_____

25

26  [4] Certain time-keepers with particularly low rates—including, for example, those with rates $100
    or less—did not provide specific evidence of their expertise, skill or experience.  The Court

27  nonetheless finds these rates reasonable because they are appropriately and proportionally lower
    than reasonable rates charged by others at their firms.

28

## 2.      Amount of Hours and Fees

### a.      Bryan Cave Hours and Fees

Adams Defendants seek $917,267.29 in fees incurred by Bryan Cave for proceedings before this Court, and $14,740.81 in fees incurred by Bryan Cave in defending against Pringle's appeal.  (Supp. Mem. at 5; Justin M. Righettini App. Decl. ¶ 23, Doc. 324-5.)

Pringle argues that Bryan Cave litigated a similar case on behalf of certain of the same defendants, and therefore many of the arguments and issues "presumably" were similar in the two cases.  (Suppl. Opp'n at 3.)  Defendants respond that the other case involved different copyrighted works, which required different analyses, and that this case involved a technologically complex sampling claim that was not present in the other case.  (Suppl. Reply at 7-9.)  The Court finds that because Pringle's argument relies on an unsupported presumption and does not explain why any particular work was unnecessarily duplicative, it is not a basis to reduce fees.

Pringle also takes issue with the fact that Bryan Cave utilized a relatively large number of timekeepers with relatively low billing rates.  (Suppl. Opp'n at 3.)  The argument is untenable, because it implies either that Bryan Cave should have only senior attorneys working on cases, or that attorneys' fees should not be awarded for the work of junior attorneys and staff.  Pringle likewise argues that timekeepers who had some of the lowest billing rates "presumably" were performing secretarial tasks.  (*Id*. at 4-5.)  Pringle fails to identify any particular work that was secretarial in nature, and his presumption that all work performed by these timekeepers was secretarial in nature is unsupported.

Pringle further argues that Bryan Cave timekeepers performed unnecessarily duplicative tasks.  (Suppl. Opp'n at 3-4, 6-7.)  Pringle provides an example of time entries related to a motion to dismiss, where a large number of timekeepers drafted, revised, re-revised, and discussed with each other various revisions of the briefing.

1   (Suppl. Opp'n at 3-4.  *See, e.g.*, Doc. 284-1 at 28-32.)[5]  Based on the Court's review

2   of Bryan Cave's time entries, the same appears to be true of other motions on which

3   Bryan Cave timekeepers billed.  (*See*, *e.g.*, Doc. 284-1 at 38-41, 44-51; Doc. 284-2

4   at 9-10, 28-29.)  The Court cannot determine the precise extent to which any of this

5   work was unnecessarily duplicative or excessive, because Bryan Cave's timekeepers

6   frequently block-billed their time entries.  In particular, based on a sampling of

7   Bryan Cave's time entries, it appears that roughly two-thirds of the time entries were

8   block-billed.  (*See* Doc. 284-1 at 3, 39, 78; Doc. 284-2 at 1, 40, 80; Doc. 306 Ex. A

9   at 2, 10, 23; Doc. 324-3 Ex. A at 2, 6, 14, 19.)[6]  The Court therefore finds that a

10   10% across-the-board reduction in Bryan Cave's fees is warranted, as well as a 10%

11   reduction of two-thirds of the fees for block-billed time entries (effectively an

12   additional 6.7% across-the-board reduction).  *See Lahiri*, 606 F.3d at 1223

13   (affirming 30% reduction of 80% of billable hours, based on 80% block-billing rate,

14   and additional 10% across-the-board reduction for excessive and redundant work).

15         Pringle also argues that for certain time entries on appeal, it cannot be

16   determined whether the work was done to defend against his appeal, or was done in

17   support of Guetta and Adams Defendants' own unsuccessful appeal.  (App. Opp'n at

18   14-15.)  However, for time entries where the description of the work does not

19   distinguish between the two appeals, Guetta and Adams Defendants are seeking

20   only half of their fees, and they are not seeking fees for work solely related to their

21   own appeal.  (*See* App. Mem. at 18 n.7; App. Reply at 8; Barry Slotnick App. Decl.

---

[5] Pringle also provides an example of a large redaction project, which required the work of a large number of junior attorneys and staff.  (Supp. Opp'n at 4.)  Nothing indicates this work was duplicative, because there is no suggestion that individuals were making the same redactions to the same documents.  To the contrary, given the size of the project, a large number of individuals reasonably could have been required to perform redactions in parallel in order to meet case deadlines.  (*See* Supp. Reply at 6-7.)

[6] The only entries that technically are not block-billed are those where the timekeeper happened to bill only a single task for the entire day.

1    at 2 n.1 & ¶ 37, Doc. 324-1; Righettini App. Decl. ¶¶ 12, 23.)  As it would not be

2    possible to determine the fees generated only by Pringle's appeal, the Court finds

3    the apportionment suggested by Defendants to be reasonable.  *See Lahiri*, 606 F.3d

4    at 1222.

5         Accordingly, the Court awards Adams Defendants $776,362.75 in attorneys'

6    fees incurred by Bryan Cave (83.33% of $932,008.10).

7

8                    **3.    Loeb & Loeb Hours and Fees**

9         Guetta Defendants seek $1,478,637.47 in fees incurred by Loeb & Loeb for

10   proceedings before this Court and $109,312.53 in fees incurred by Loeb & Loeb in

11   defending against Pringle's appeal.   (Supp. Mem. at 5; Slotnick App. Decl. ¶ 37.)

12        Having reviewed Loeb & Loeb's time entries, the Court finds that some of the

13   work performed appears to be unnecessarily duplicative.  For example, significant

14   time was spent by multiple attorneys drafting, revising, re-revising, and discussing

15   drafts of motions; multiple attorneys defended the same depositions; and attorneys

16   billed for appearing, but apparently not arguing, at hearings.  (*See, e.g.*, Doc. 282-10

17   at 1, 6, 9-13, 22, 29, 39-42, 50-53, 60-61, 64, 72-86, 93; Doc. 324-3 Ex. 5 at 1-19.)

18   Moreover, a significant number of entries have vague descriptions, making it

19   difficult to evaluate whether the time spent on the task was reasonable or necessary.

20   This difficulty is further compounded by block-billing.  Based on a sampling of

21   Loeb & Loeb's timekeepers' entries, roughly half of the entries were block-billed.

22   (*See* Doc. 282-10 at 1, 20, 40, 60, 80, 100; Doc. 324-3 Ex. 9 at 1, 10, 20.)[7]  The

23   Court therefore finds a 10% across-the-board reduction is warranted, as well as a

24   _____

25
26   [7] For most Loeb & Loeb timekeepers, the only entries that technically are not block-billed were
     those where the timekeeper happened to list only one specific task for the entire day.  One Loeb &
27   Loeb timekeeper sometimes, but not always, described the time spent on each individual task
     when billing for multiple tasks in the same day.

28
                                        11

10% reduction of 50% of the fees for block-billed time entries (effectively an additional 5% across-the-board reduction).

Pringle argues certain work performed by Loeb & Loeb timekeepers on appeal was secretarial in nature, citing broad characterizations made by Loeb & Loeb regarding work that its non-attorney timekeepers billed for the appeal.  (App. Opp'n at 18.  *See* Slotnick App. Decl. ¶¶ 30-33.)  Defendants do not appear to dispute that such characterizations indicate the work performed was generally secretarial in nature.  The Court finds that one-fourth[8] of the fees billed by these timekeepers and another non-attorney, Virginia Briseno—totaling $7,041.63— should be excluded from the fee award.

Accordingly, the Court awards Guetta Defendants $1,343,772.12 in attorneys' fees incurred by Loeb & Loeb ($1,587,950 less $7,041.63, multiplied by 85%).

### 4.    Caldwell Leslie & Proctor, PC Hours and Fees

Defendants UMG Recordings and Interscope Records seek $54,690.50 in attorneys' fees incurred by Caldwell Leslie & Proctor, PC for proceedings before this Court.  (Supp. Mem. at 5.)[9]  Pringle argues that many of the entries contain redactions, making it difficult to determine whether the time billed for the tasks was reasonable.  (Suppl. Opp'n at 8.)  However, the redactions are limited and do not impair the Court's ability to determine the nature of the work performed or time billed.  Based on the Court's review of Caldwell Leslie's time entries, there does not appear to be the same degree of unnecessarily duplicative work as Bryan Cave or

---

[8] Based on the Court's review of the entries underlying the characterizations of work performed by these timekeepers on appeal, the Court finds that a 50% reduction of these timekeepers' fees is appropriate.  As discussed above, Defendants seek only half of the fees incurred by their counsel for time entries that cannot be separated between the two appeals.  Thus the Court limits the reduction to 25%.

[9] UMG Recordings and Interscope Records do not seek attorneys' fees incurred for proceedings on appeal.  (App. Mem. at 2 n.1.)

Loeb & Loeb.  Nonetheless, it is difficult to make an exact determination as to this issue due to block-billing—based on a sampling of Caldwell Leslie's time entries, it appears that roughly one-third of the entries were block-billed.  (Doc. 281-1 at 2, 11, 22, 31.)  The Court therefore imposes a 5% across-the-board cut, as well as a 10% cut of 33% of the requested fees for block-billed entries (effectively an additional 3.3% across-the-board cut).

Accordingly, the Court awards UMG Recordings and Interscope Records $50,151.19 in attorneys' fees incurred by Caldwell Leslie (91.7% of $54,690.50).

### 5.      McPherson Rane LLP Hours and Fees

Defendants Stacy Ferguson and Headphone Junkie Publishing LLC seek $29,232.50 in attorneys' fees incurred by McPherson Rane LLP for proceedings before this Court.  McPherson Rane is Ms. Ferguson's personal counsel, and assisted in preparing for and defending Ms. Ferguson's deposition.  (Doc. 288 ¶ 2; Doc. 288-1.)  However, Bryan Cave is also representing Ms. Ferguson (and Headphone Junkie) in this litigation, and Bryan Cave billed for preparing for and defending Ms. Ferguson's deposition.  (Doc. 284-2 at 6-7.)  In light of Bryan Cave's more general representation of Ms. Ferguson and Headphone Junkie, the Court finds the fees incurred by McPherson Rane were not reasonably necessary.  Moreover, McPherson Rane block-billed time for both this case and another case within the same time entries, making it virtually impossible to estimate the amount of time spent on the specific tasks it worked on in this case.  Accordingly, the Court does not award any of the attorneys' fees billed by McPherson Rane.

### C.      Costs

Under 17 U.S.C. § 505, the Court in its discretion may award "full costs" to the prevailing party, which includes both taxable and non-taxable costs.  *See* 17

U.S.C. § 505; *Twentieth Century Fox Film Corp. v. Ent'mt Dist.*, 429 F.3d 869, 885 (9th Cir. 2005) ("Construing § 505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word 'full' out of the statute . . . . Thus, we hold that district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under § 505.").

As to taxable costs incurred in proceedings before this Court, Defendants seek a total of $50,971.96, based on $23,310.34 incurred by Loeb & Loeb, $26,041.95 incurred by Bryan Cave, and $1,619.67 incurred by Caldwell Leslie.  (Supp. Mem. at 16.)  As to non-taxable costs in proceedings before this Court, Defendants seek a total of $300,096.24, based on $191,639.27 incurred by Loeb & Loeb, $108,139.77 incurred by Bryan Cave, and $317.20 incurred by Caldwell Leslie.  (*Id*. at 15.)[10]

Pringle fails to address non-taxable costs.  As to taxable costs, Pringle simply incorporates by reference his objections to Adams Defendants' and Guetta Defendants' applications to the Clerk for taxable costs.  (*See* Suppl. Opp'n at 9-10.)  Pringle's objections to the costs listed in these applications are largely that the costs should not be included as taxable costs.  (*See* Docs. 292, 294.)[11]  To the extent such costs are considered non-taxable, they still would be allowed under 17 U.S.C. § 505.  *See Twentieth Century Fox*, 429 F.3d at 885.  Accordingly, the Court finds that Defendants' full costs—both taxable and non-taxable—should be awarded.[12]

---

[10] McPherson Rane did not incur any costs.  (*See id*. at 5.)  As to costs on appeal, no application for taxable costs was filed with this Court, and Guetta Defendants and Adams Defendants did not discuss or list any of their costs on appeal in their appellate briefing.  (*See* App. Mem. at 2 n.1, 18-19; Slotnick App. Decl. ¶ 3; Righettini App. Decl. ¶ 23.); C.D. Cal. L.R. 54-4.

[11] Pringle's argument in his objections that the Court should deny costs due to a purported financial disparity between the parties is not persuasive.  Assuming such an argument can be made outside the civil rights context, for the same reasons the *Lieb* factors support awarding attorneys' fees, any financial disparity would not, by itself, be sufficient to overcome the presumption in favor of awarding costs.

[12] Pringle also argues that Caldwell Leslie's requested costs should be denied because it did not submit an application for taxable costs to the Clerk.  (Supp. Opp'n at 9.)  This argument is inapplicable to non-taxable costs, and as to taxable costs, Caldwell Leslie included its costs in the

(footnote continued)

**V.    Conclusion**

For the reason stated above, Guetta Defendants' and Adams Defendants' motion for attorneys' fees incurred on appeal is GRANTED.  The Court awards $776,362.75 in attorneys' fees to Adams Defendants; $1,343,772.12 in attorneys' fees to Guetta Defendants; and $50,151.19 in attorneys' fees to UMG Recordings and Interscope Records.  The Court does not award any of the attorneys' fees billed by McPherson Rane.  The Court awards the full costs requested by Defendants, in the amount of $351,068.20.

**SO ORDERED.**

DATE: July 23, 2014                    JOSEPHINE L. STATON
                                       HONORABLE JOSEPHINE L. STATON
                                       UNITED STATES DISTRICT JUDGE

---

billing statements it provided in support of Defendants' initial motion for attorneys' fees and full costs.  (*See* Docs. 276, 281.)